IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MALIBU MEDIA, LLC, a California
limited liability company,

       Plaintiff,                      No. 2:12-cv-01513 MCE KJN

   v.

JOHN DOES 1 through 13,

       Defendants.               <u>ORDER</u>

/

       Presently before the court is plaintiff's ex parte application for leave to conduct expedited discovery ("Application") pursuant to Federal Rule of Civil Procedure 26(d)(1).[1] Plaintiff seeks leave of court to serve third-party discovery subpoenas on nonparty Internet Service Providers ("ISP") in order to obtain the true identities of 13 "John Doe" defendants ("John Does"), who are alleged to have infringed on, or contributed to the infringement of, 25 of plaintiff's copyrighted pornographic works that are or were contained on a single website. (<u>See</u> <u>generally</u> Application at 1, Dkt. No. 4; Compl. ¶¶ 2, 13-16.)[2] Because plaintiff did not request a

---

[1] This matter was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

[2] Ex parte applications such as this one have grown common in this court. However, plaintiff's complaint in this case is somewhat different than the typical case where Doe defendants

1

hearing, and oral argument would not materially aid the resolution of the pending matter, the court resolves plaintiff's Application on the moving papers and record. See Fed. R. Civ. P. 78(b); E. Dist. Local Rule 230(g). In consideration of the Application, and for the reasons stated below, the court grants plaintiff's Application for leave to conduct early discovery in part, and authorizes plaintiff to serve one nonparty subpoena pursuant to Federal Rule of Civil Procedure 45 in accordance with the remainder of this order.

I.   BACKGROUND

Plaintiff filed a complaint against defendants identified as "John Does 1 through 13" asserting claims of copyright infringement and contributory infringement in regards to 25 copyrighted works that were contained on a single website ("Works").[3] (See Compl. ¶¶ 2, 13-15.) Plaintiff alleges that it owns the federal copyrights to the Works.[4] (See id. ¶¶ 12, 48, 55 & Ex. B.)

Plaintiff alleges that the John Does, acting in concert with each other, used an online peer-to-peer media distribution system, a "BitTorrent" file sharing protocol, to download

////

---

are alleged to have infringed on a single copyrighted work. Here, plaintiff alleges that defendants infringed on plaintiff's copyrights to 25 different works housed on a single website by conducting what plaintiff describes as a "siterip." (Compl. ¶ 2.) Because of the generalized "form" nature of plaintiff's Application, there is no discussion in the Application or supporting declarations of the nature of this "siterip," or that 25 works are at issue rather than one work. Additionally, some of plaintiff's citations to its complaint contained in the Application do not match the actual allegations in the complaint. (Compare Application at 3 (purporting to cite Compl. ¶¶ 46-48), with Compl. ¶¶ 46-48.) Plaintiff's counsel, who appears to be opening these types of cases in this court with increasing frequency, should strongly consider tailoring her ex parte applications and supporting materials to each particular case instead of filing form applications.

[3] Although plaintiff labeled both of its claims "Contributory Infringement," plaintiff's substantive allegations reflect one claim for copyright infringement and one claim for contributory infringement.

[4] Pursuant to 17 U.S.C. § 501(b), the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." Accord Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884 (9th Cir. 2005) (en banc).

2

and distribute the website that contained the Works.[5] (See Compl. ¶¶ 11, 15-16, 19, 31, 36, 38, 49, 57.) Plaintiff's complaint does not identify the particular website in question, but alleges that defendants were able to convert that entire website, including the Works, into a torrent file through a maneuver characterized by plaintiff as a "siterip." (See id. ¶ 2 ("Each of the Defendants copied and distributed a website containing 25 federally registered copyrighted movies owned by Plaintiff . . . . This is known as a 'siterip.'"); see also id. ¶ 14 ("Each of the Works were on a website that was converted into are in a single torrent file, as evidenced by a single unique Cryptographic Hash Value").)

Plaintiff alleges that it does not know the actual name of any of the John Does at this time.[6] (See id. ¶ 8; see also Kushner Decl. ¶ 2, Dkt. No. 4, Doc. No. 4-4.) However, through

---

[5] The complaint generally describes the mechanics of the BitTorrent protocol. (Compl. ¶¶ 17-18, 20-30, 32-35, 37-38.) A magistrate judge in the Northern District of California summarized the BitTorrent protocol as follows:

> In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

Diabolic Video Prods., Inc. v. Does 1-2099, No. 10-CV-5865-PSG, 2011 WL 3100404, at *1-2 (N.D. Cal. May 31, 2011) (unpublished).

[6] The use of "Doe" defendants is generally disfavored. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, a plaintiff should be given an opportunity through discovery to identify such defendants where the identities of those defendants are not be known prior to the filing

3

use of an investigator, plaintiff identified evidence of the John Does' alleged infringing activities. Specifically, plaintiff's investigator identified each John Doe by a unique Internet Protocol ("IP") address that corresponds with that John Doe's alleged infringing activity conducted while participating in the BitTorrent swarm.[7] (See Compl. ¶¶ 36, 38-40 & Ex. A; Fieser Decl. ¶¶ 15-21 & Ex. B, Dkt. No. 4, Doc. Nos. 4-1, 4-3.) Plaintiff's investigator used a "unique hash number" associated with the particular torrent file at issue as a sort of digital fingerprint to identify the IP addresses associated with the alleged members of the swarm.[8] (See Compl. ¶¶ 40-42 & Ex. A; Fieser Decl. ¶¶ 18-19 & Ex. B.) The investigator also viewed a control copy of the Works along side the digital media file identified by the unique hash number and associated with the subject IP addresses, and "determined that the digital media file contained movies that were identical, strikingly similar or substantially similar" to the Works. (See Fieser Decl. ¶ 21; see also Compl. ¶ 44.)

Shortly after filing the complaint, plaintiff filed the pending Application in order to discover the John Does' actual names and contact information so that plaintiff may name them in an amended complaint and serve them with process. (See Application at 1, 4-5.) Specifically, plaintiff seeks leave of court to serve Rule 45 subpoenas on ISPs associated with the various IP addresses in order to identify each John Doe defendant.[9]

---

of a complaint, "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Id.

[7] The alleged infringing activity appears to have occurred during the period from April 22, 2012, through May 24, 2012. (See Fieser Decl., Ex. B; see also Compl. Ex. A.)

[8] Plaintiff alleges that the unique hash number identified here is: "07465D809433A7FA20611BDDF4F0C6C36D448FB2." (Compl. ¶ 40.)

[9] Based on a chart prepared by plaintiff listing each John Doe and the associated IP address, "hit date," city, state, ISP, and "network," plaintiff intends to serve subpoenas on the following ISPs: Bright House Networks, Comcast Cable, Frontier Communications, and Northland Cable Television. (Fieser Decl., Ex. B; see also Compl. Ex. A.) Additionally, plaintiff's Application states, in passing, that plaintiff "seeks leave of Court to serve a Rule 45 subpoena on the ISPs and any related intermediary ISPs." (Application at 1.) Plaintiff failed to explain what an "intermediary ISP" is or

4

No status (pretrial scheduling) conference has been set in this case. (See Order Requiring Joint Status Report ¶¶ 4-5, Dkt. No. 3.) It is highly unlikely that a discovery conference pursuant to Federal Rule of Civil Procedure 26(f) has taken place, or could take place, given plaintiff's representation that it does not presently know any of the John Does' true names.

II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 26(d)(1) provides: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, *or by court order*" (emphasis added).  District courts within the Ninth Circuit have permitted expedited discovery prior to the Rule 26(f) conference upon a showing of "good cause." See, e.g., In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (citing Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273 (N.D. Cal. 2002)); accord Am. LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d at 1179 (citation and quotation marks omitted).

III.    DISCUSSION

Here, plaintiff seeks permission to conduct early or expedited discovery and serve Rule 45 subpoenas on ISPs that might be able to assist plaintiff in identifying the true identities of the John Does. District courts within the Ninth Circuit have often found good cause supporting early or expedited discovery in cases where the plaintiff alleged copyright infringement accomplished through distribution of the work over a peer-to-peer network, and where the plaintiff only named Doe defendants and sought early discovery to obtain the identities and contact information of the alleged infringers from associated ISPs. See, e.g., Berlin Media

---

why plaintiff needs to conduct discovery in regards to such intermediary ISPs. Accordingly, the court does not grant plaintiff leave to serve subpoenas on any intermediary ISPs.

5

Art E.K. v. Does 1 through 146, No. S-11-2039 KJM GGH, 2011 WL 4056167, at *2 (E.D. Cal. Sept. 12, 2011) (unpublished) (granting leave to conduct expedited discovery in the form of Rule 45 subpoenas seeking "information sufficient to identify each Doe defendant by name, current and permanent address, telephone number, and e-mail address"); UMG Recordings, Inc. v. Doe, No. C 08-1193 SBA, 2008 WL 4104214, at *4-5 (N.D. Cal. Sept. 3, 2008) (unpublished) (granting leave to conduct expedited discovery in the form of Rule 45 subpoenas seeking "documents that identify Defendant, including the name, current (and permanent) address and telephone number, e-mail address, and Media Access Control addresses for Defendant" John Doe); Arista Records LLC v. Does 1-43, No. 07cv2357-LAB (POR), 2007 WL 4538697, at *1-2 (S.D. Cal. Dec. 20, 2007) (granting leave to conduct expedited discovery in the form of Rule 45 subpoenas seeking documents that would reveal each Doe defendant's "true name, current and permanent addresses and telephone numbers, e-mail addresses, and Media Access Control addresses."); but see Hard Drive Prods., Inc. v. Does 1-90, No. C 11-03825 HRL, 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012) (unpublished) (stating that "the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net)").[10]

---

[10] Nothing in the record presently supports that plaintiff is using the court to "pursue an extrajudicial business plan," but the court notes some growing concern among district courts about these sorts of expedited discovery matters. For example, a judge in the Central District of California recently granted plaintiff's motion for expedited discovery and permitted expedited discovery as to one Doe defendant, but severed the remaining nine defendants from the case and concluded his order with the following:

**C. The economics of pornographic copyright lawsuits**

The Court is familiar with lawsuits like this one. [Citations omitted.] These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a

For example, in Arista Records LLC, the plaintiffs alleged that unidentified defendants used an online media distribution system to download and distribute plaintiffs' copyrighted works to the public without permission. Arista Records LLC, 2007 WL 4538697, at *1. Because the plaintiffs were only able to identify each defendant by a unique IP address assigned to that defendant, plaintiffs filed an ex parte application seeking leave to immediately serve discovery on a nonparty ISPs to identify the Doe defendants' true identities. Id. The district court found good cause to allow expedited discovery on the basis of the plaintiffs' prima facie showing of infringement, the risk that the ISP would not long preserve the information sought, the narrow tailoring of the requests to the minimum amount of information needed to identify the defendants without prejudicing their rights, and the fact that the expedited discovery would substantially contribute to moving the case forward. Id. The court further noted that, without such discovery, plaintiffs could not identify the Doe defendants and would not be able to pursue their lawsuit to protect their copyrighted works. Id.

////

---

> nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

Malibu Media, LLC v. John Does 1 through 10, No. 2:12-cv-3623-ODW(PJWx), 2012 U.S. Dist. LEXIS 89286, at *8-9 (C.D. Cal. June 27, 2012) (unpublished); see also Malibu Media, LLC v. Does 1-5, No. 12 Civ. 2950(JPO), 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) (unpublished) (permitting limited discovery but stating that the court "shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded.") (citing, among other authorities, In re BitTorrent Adult Film Copyright Infringement Cases, Nos. 11-3995 (DRH) (GRB) et al., 2012 WL 1570765 (E.D.N.Y. May 1, 2012) (unpublished)).

Here, the undersigned finds that good cause supports permitting plaintiff to conduct limited early discovery in order to discover the actual identity of, and contact information for, defendant John Doe 1.  Plaintiff has persuasively argued that it cannot identify John Doe 1, or any of the John Does, without early discovery and, therefore, cannot name the John Does or serve them with process.  Second, plaintiff plainly cannot conduct a Rule 26(f) discovery conference in advance of the scheduling conference without knowing at least one defendant's real name and contact information.  Third, plaintiff's representations presently support that the IP address identified by plaintiff for John Doe 1—174.134.162.70—is associated with a particular individual, and that the discovery sought will facilitate identification of, and service of the summons and complaint on, John Doe 1.  Fourth, plaintiff's investigative technician has declared, albeit rather speculatively and without explanation, that some ISPs store subscriber information associated with particular IP addresses for a limited period of time.[11]  The undersigned also finds, at least on the present record, that there is little risk of material prejudice to John Doe 1 or the associated ISP, Bright House Networks, if that ISP is served with a Rule 45 subpoena that requires the ISP to provide the actual name and contact information of John Doe 1.  Finally, of course, John Doe 1 and the ISP may move to quash the subpoena or seek a protective order.

In short, good cause supports permitting plaintiff to conduct limited, expedited discovery.  The minimal risk of prejudice to John Doe 1 and the associated ISP does not outweigh plaintiff's need for the discovery sought.

However, the undersigned does not grant plaintiff leave to conduct expedited discovery as to John Does 2 through 13.  At least two reasons support this conclusion.  First, plaintiff's primary aim is to move this case forward, which ultimately means serving a defendant

---

[11] The declaration of plaintiff's investigator, Tobias Fieser, states: "Many ISPs only retain the information sufficient to correlate an IP address to a person at a given time for a very limited amount of time." (Fieser Decl. ¶ 10.)  Fieser's statement is unexplained, unsupported by any documentation, and so general as to be of little to no value.

with the summons and complaint and proceeding with normally scheduled discovery. Permitting plaintiff to conduct discovery to identify John Doe 1 will allow plaintiff to name and serve a defendant in this case, conduct a Rule 26(f) conference, and then conduct discovery as to the remaining John Does. In light of plaintiff's allegation that the John Does acted "in concert with each other" (Compl. ¶ 11), discovery propounded on John Doe 1 should facilitate plaintiff's identification of some, if not all, of the remaining defendants.

Second, by limiting expedited discovery to John Doe 1, the court avoids prematurely ruling on the question of improper joinder, which appears endemic to BitTorrent file sharing cases such as this one.[12] See, e.g., OpenMind Solutions, Inc. v. Does 1-39, No. C 11-3311 MEJ, 2011 WL 3740714, at *4-5 (N.D. Cal. Aug. 23, 2011) (unpublished) (granting early discovery as to one Doe defendant but dismissing all but one of the 39 Doe defendants from the action without prejudice for improper joinder); Diabolic Video Prods., Inc., 2011 WL 3100404, at *3-5 (granting early discovery as to one Doe defendant but severing all but one of the 2,099 Doe defendants from the action for improper joinder); see also On The Cheap, LLC v. Does 1-5,011, 280 F.R.D. 500-03, (N.D. Cal. 2011) (dismissing 5,010 defendants without prejudice for improper joinder after expedited discovery was permitted and conducted). Here, although plaintiff alleges that all of the defendants acted in concert, it also alleges that the 13 defendants acted on different dates over approximately five weeks, at different times of day, and at locations scattered throughout California.[13] (See Compl. ¶ 11 & Ex. A.) Plaintiff's discovery as to John Doe 1 may very well bolster plaintiff's allegations regarding proper joinder, but at a minimum develop the record.

////

---

[12] The undersigned notes that an ultimate determination regarding the propriety of joinder is beyond the limited jurisdiction of the magistrate judges of this court. See E. Dist. Local Rule 302(c).

[13] Some of the locations of the alleged infringement, such as Delano, Coarsegold, and Clovis, are not located within the Sacramento Division of this court.

IV.     CONCLUSION

   For the foregoing reasons, IT IS HEREBY ORDERED that:

   1. Plaintiff's ex parte application to conduct expedited discovery (Dkt. No. 4) is granted in part.

   2. Plaintiff may immediately serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Bright House Networks in order to identify the actual name and contact information for John Doe 1, who is associated with IP address 174.134.162.70.  Such subpoena shall be limited in scope and may only seek the following information about defendant John Doe 1: name, address, telephone number, and e-mail address.[14]  A copy of this order shall be attached to any such subpoena.

   3. Bright House Networks shall in turn serve a copy of the subpoena and a copy of this order on the subscriber, defendant John Doe 1, within 30 days from the date of service of the subpoena on the ISP.  The ISP may serve the subscriber using any reasonable means, including written notice sent to the subscriber's last known address, transmitted either by first-class mail or via overnight service.

   4. The ISP served with a subpoena pursuant to this order shall confer with plaintiff before assessing any charge in advance of providing the information requested in the subpoena.

   5. Nothing in this order precludes the ISP or defendant John Doe 1 from challenging the subpoenas consistent with the Federal Rules of Civil Procedure and this court's Local Rules.  However, any such challenge, such as a motion to quash the subpoena or a motion for a protective order, shall be filed before the return date of the subject subpoena, and the return date shall be no earlier than 60 days from the date of service of the subpoena on the ISP.

---

[14] Plaintiff has not made an adequate showing as to why it needs to discover the Media Access Control number associated with John Doe 1 on an expedited basis.  Plaintiff should be able to serve the summons and complaint on John Doe 1 without acquiring the Media Access Control number.

6. If the ISP or the subscriber files a motion to quash or a motion for a protective order, the ISP shall preserve the information sought by the subpoena pending resolution of such a motion.

7. Any information disclosed to plaintiff by the ISP may only be used by plaintiff for the purpose of protecting its rights under the Copyright Act, 17 U.S.C. §§ 101 et seq.

IT IS SO ORDERED.

DATED: July 6, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE